**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| CHERYL THOMAS, ) | |
| ) | CASE NO.    1:10-cv-1777 |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff Cheryl Thomas ("Thomas") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying her claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is AFFIRMED.

**I. Procedural History**

On October 13, 2005, Thomas filed an application for POD, DIB, and SSI alleging a disability onset date of July 27, 2005. Her application was denied both initially and upon

reconsideration. Thomas timely requested an administrative hearing.

On August 26, 2008, an Administrative Law Judge ("ALJ") held a hearing during which Thomas, represented by counsel, testified. Thomas F. Nimberger also testified as an impartial vocational expert ("VE"). On November 3, 2008, the ALJ found Thomas was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.

## II.  Evidence

### *Personal and Vocational Evidence*

Age forty-three (43) at the time of her administrative hearing, Thomas is a "younger" person under social security regulations. *See* 20 C.F.R. §§ 404.1563(c) & 416.963(c). Thomas has a high school education and past relevant work as a word processor.

### *Hearing Testimony*

At the hearing on August 26, 2008, Thomas testified to the following:

- She is unmarried and has two children, only one of whom is under eighteen (18) years of age. (Tr. 834-35.)

- She finished high school and attended some college courses. (Tr. 835.)

- She does not drive. (Tr. 836.)

- She last worked in July of 2005 as a word processor. The job ended after she sustained a severe head injury. (Tr. 835-36.)

- She was unable to return to work due to bad headaches, poor balance, an inability to stand long, short-term memory loss, heart problems, and her organs were "just out of control." (Tr. 837.)

- She attended 28 to 30 mental health counseling sessions for depression. (Tr. 837.)

2

- She regularly takes the following medications: Florinef, Penidol, Mestinon, Neurontin, Cymbaltam, Darvocet, Zanaflex, and Aspirin. (Tr. 838.)

- She tries to attend her daughter's school activities and church services on Sunday mornings. (Tr. 839-40.)

- She has never been referred to any type of crisis center for psychological or psychiatric treatment. (Tr. 840.)

- She uses a nebulizer because her Postural Orthostatic Tachycardia Syndrome (POTS) affects her lungs. (Tr. 840.)

- She "can't sit no longer than [she] can stand," and she needs to be up and down. (Tr. 841.)

- She experiences tingling, numbness, and pain in her hands and feet. She could pick up paper clips but could not hold them due to her hands trembling. (Tr. 842.)

The ALJ posed the following hypothetical to the VE: "I'm going to ask you to consider a claimant similar to this claimant who would have the capacity to do sedentary work with one restriction and that would be, a sit/stand option." (Tr. 845.) The VE responded that such an individual would not be able to perform Thomas's past relevant work unless she could sit for at least six hours in an eight-hour work day. *Id*. In response to a question posed by Thomas's attorney, the VE testified that limitations to simple, routine and low stress work would preclude Thomas from performing her past relevant work. (Tr. 846.)

### III.  Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a

3

continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Thomas was insured on her alleged disability onset date, and remained insured through June 30, 2007. (Tr. 22.) Therefore, in order to be entitled to POD and DIB, Thomas must establish a continuous twelve month period of disability commencing between these dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A claimant may also be entitled to receive SSI benefits when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

### IV. Summary of Commissioner's Decision

The ALJ found Thomas established medically determinable, severe impairments, due to

---

[1] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

POTS, status post head injury with asserted residuals, affective disorder, and back sprains and strains. (Tr. 22.) However, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Thomas was found incapable of performing her past work activities, but was determined to have a Residual Functional Capacity ("RFC") for a limited range of sedentary work. The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Thomas is not disabled.

**V. Standard of Review**

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must consider whether the proper legal standard was applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations or failure to provide the reviewing court with a sufficient basis to determine that the

5

Commissioner applied the correct legal standards are grounds for reversal where such failure prejudices a claimant on the merits or deprives a claimant of a substantial right. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

## VI. Analysis

*Treating Physicians (POTS)*

Thomas argues that the RFC finding directly contradicts her treating and examining physicians. (ECF No. 17 at 9.)

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 192 F. App'x 456, 560 (6th Cir. 2006) (*quoting* 20 C.F.R. § 404.1527(d)(2)). "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 192 Fed. App'x at 460-61 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.) Furthermore, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[2]

---

[2] Pursuant to 20 C.F.R. § 404.1527(d)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how

Nonetheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406 ("It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record.") (*quoting* SSR 96-2p). Moreover, the ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, but may reject such determinations when good reasons are identified for not accepting them. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir.1984).

According to 20 C.F.R. § 404.1527(e)(1), the Social Security Commissioner makes the determination whether a claimant meets the statutory definition of disability. This necessarily includes a review of all the medical findings and other evidence that support a medical source's statement that one is disabled. "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." *Id*. It is the Commissioner who must make the final decision on the ultimate issue of disability. *Duncan*, 801 F.2d at 855; *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982). In addition, a claimant's RFC is not a medical opinion, but

---

well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

7

an administrative determination reserved to the Commissioner. *See* 20 C.F.R.§ 416.945(e). As such, the ALJ bears the responsibility for assessing a claimant's RFC, based on all of the relevant evidence. *See* 20 C.F.R. § 416.945(a).

To support her argument that the RFC finding directly contradicts the conclusions of her treating and examining physicians, Thomas merely catalogues some of the treatment she received and the diagnoses that she suffers from POTS. (ECF No. 17 at 8-12.) It is not entirely clear which opinions the ALJ allegedly rejected in violation of the treating physician rule. It also bears noting that Thomas's recitation of the medical treatment in her argument consists primarily of her own subjective complaints made to various physicians. The mere fact that a physician recorded a patient's subjective allegations of her symptoms does not convert those allegations into a physician's opinion. *See, e.g., Poe v. Comm'r of Soc. Sec.*, 342 Fed. Appx.149, 156 (6th Cir. 2009) (finding treating physician was not entitled to deference where it was based on claimant's subjective complaints).

Furthermore, Thomas has not identified any opinions of her treating physicians that are plainly at odds with the RFC. Nonetheless, she does suggest that the ALJ failed to provide "good reasons" for the weight accorded to the opinions of Dr. Craciun and Dr. Kilmartin. (ECF No. 17 at 11.) With respect to Dr. Kilmartin, Thomas makes a reference to the treatment notes, but does not explain how her treatment notes are inconsistent with the RFC or why the ALJ's assignment of less weight to her opinion was improper.[3] (ECF No. 17 at 12, *citing* Tr. 399-400.) Similarly, Dr. Craciun's treatment notes are not inherently inconsistent with the RFC finding,

---

[3] The ALJ specifically assigned less weight to Dr. Kilmartin's assessment, because Dr. Kilmartin herself noted that Thomas may have been malingering and exhibited evidence of conversion disorder. (Tr. 30, 401.)

8

and thus it does not appear that the ALJ actually rejected them. As expressly noted by the ALJ, Dr. Craciun did not opine that Thomas's physical impairments were of debilitating severity. (Tr. 28.) A review of Dr. Craciun's treatment notes do not reveal any obvious inconsistencies between his objective medical findings and an RFC for sedentary work with a sit/stand option.[4]

The ALJ did not reject the diagnosis that Thomas suffered from POTS. In fact, he specifically listed POTS among Thomas's severe impairments. Furthermore, the ALJ did not ignore this diagnosis or Dr. Craciun when discussing the RFC. (Tr. 22.) With respect to Thomas's POTS, the ALJ offered the following analysis:

> In terms of the claimant's alleged POTS symptoms, the record shows that her symptoms appeared to improve; and that the claimant had more strength in the extremities than asserted. She complained of shortness of breath on exertion but no chest pain in June 2005 (Exhibit 5F/43). The claimant complained of right leg numbness in July 2005, but testing revealed no positive findings (Exhibit 2F/5-6), and the claimant had no physiological weakness (Exhibit 2F/25). She could stand and walk well, and had intact sensation and intact coordination (Exhibit 2F/24-25). The claimant complained of paresthesias in November 2005. A diagnosis was not entered until November 2005 pursuant to a Tilt Table test (Exhibit 11F/19). However, I note that treating physician A. Romeo Craciun, M.D. did not opine that the claimant was unable to work at this time. The claimant continued to show good strength in the extremities (Exhibit 11F/17; Exhibit 12F/5; Exhibit 13F/2; Exhibit 18F/32; Exhibit 22F/2; Exhibit 28F). She did have a mild decrease in sensation at one point (Exhibit 11F/17) with intermittent difficulty in the right arm and leg (Exhibit 12F/8). She also complained of weakness. However, an EEG was within normal limits in February 2007 (Exhibit 17F/22), and the claimant's POTS improved (Exhibit 13F/2; Exhibit 28F/9).

(Tr. 28.)

To the extent that Thomas claims that her suffering from POTS is itself inconsistent with

---

[4] To the extent Thomas's argument was based on other alleged inconsistencies between the RFC finding and her treating physician's opinions, Thomas has not drawn the Court's attention to any such conflicts in the record. It is not the Court's function to search the administrative record for evidence to support Thomas's argument and find inconsistencies. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

the RFC, such an argument is not well taken. There is no indication from any physician that the functional limitations associated with her POTS would be inconsistent with the RFC. *See Young v. Sec'y of Health and Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990) (diagnosis of impairment does not indicate severity of impairment); *accord Collins v. Astrue*, 2011 U.S. Dist. LEXIS 49462 (S.D. Ohio Mar. 8, 2011) ("A diagnosis, in and of itself, is not conclusive evidence of disability because it does not reflect the limitations, if any, that it may impose upon an individual."); *cf. Bradley v. Sec'y of Health and Human Servs*., 862 F.2d 1224,1227 (6th Cir. 1988) (signs of arthritis not enough; must show that condition is disabling).

Therefore, Thomas's first assignment of error is not well taken.

*Mental Restrictions*

Thomas also argues that the ALJ's assessment of her mental restrictions was insufficient. (ECF No. 17 at 13-14.) The RFC finding contains the following non-exertional limitations: low stress work (i.e., low production quotas) and simple, routine work (no arbitration, negotiation, or mediation). (Tr. 25.)

Thomas asserts that the ALJ found that her affective disorder constituted a "severe impairment," yet, in his RFC finding, only limited her to simple, routine, and low stress work. (ECF No. 17 at 13.) To the extent that Thomas is claiming that the ALJ erred because he included only relatively minor to moderate limitations in the RFC to accommodate her "severe" mental impairments, such argument is not well taken. In the Sixth Circuit, a claimant's impairments are categorized as "severe" if there is merely a *de minimis* impact on his or her

10

ability to perform basic work activities.[5] *See Halcomb v. Bowen*, No. 86-5493, 1987 WL 36064, at *3 (6th Cir. May 27, 1987); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89-90 (6th Cir. 1985); *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 691-92 (6th Cir. 1985); Social Security Ruling 96-3P: *Policy Interpretation Ruling Titles II and XVI: Considering Allegations of Pain and Other Symptoms in Determining Whether a Medically Determinable Impairment is Severe*, 1996 WL 374181, at *1. Thomas has not cited any law suggesting that finding an impairment "severe" at Step Two automatically necessitates major restrictions when determining the claimant's RFC at Step Four. Given the very broad definition of what constitutes a severe impairment at Step Two, it is not *per se* inconsistent for a severe impairment to result in relatively minor work restrictions.

Thomas argues that the ALJ's RFC finding was inconsistent with the opinion of consultative examiner Joseph Konieczny, Ph.D., who ascribed Thomas a Global Assessment of Functioning ("GAF") score of 48 on November 25, 2005.[6] (ECF No. 17 at 13, *citing* Tr. 362-67.) The ALJ, however, appeared to put greater stock in other portions of Dr. Konieczny's assessment. (Tr. 30.) Specifically, the ALJ noted Dr. Konieczny's opinion that Thomas had adequate ability to concentrate, to attend to tasks, to follow and understand directions, moderate limitation in handling stress, and mild to moderate limitation in social functioning. (Tr. 30,

---

[5] The regulations describe a severe impairment in the negative: "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a).

[6] A GAF score between 41 and 50 indicates serious symptoms or a serious impairment in social, occupational, or school functioning. A person who scores in this range may have suicidal ideation, severe obsessional rituals, no friends, and may be unable to keep a job. *See Diagnostic and Statistical Manual of Mental Disorders* ("DSM") (American Psychiatric Association, 4th ed. revised, 2000).

*citing* Tr. 366.) The ALJ explained that Dr. Konieczny's opinion "underscores the fact that the claimant's impairments are not of disabling severity and is given some weight on this general basis." (Tr. 30.) With respect to the GAF score, the ALJ explained that other evidence of record did not support such a low level of functioning on a consistent basis for twelve months. *Id*. It was not unreasonable for the ALJ to rely more heavily on Dr. Konieczny's verbalized statements regarding Thomas's limitations rather than his GAF assessment. The ALJ explained his reasons for doing so. Moreover, "according to the DSM's explanation of the GAF scale, a score may have little or no bearing on the subject's social and occupational functioning," especially where the physician did not accompany a claimant's GAF score with any suggestion that the claimant was unable to do any work. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 511 (6th Cir. 2006) (also noting that "we are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place."); *see also Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) ("[T]he ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate.")

Thomas further argues that the RFC was insufficient because it was inconsistent with the opinion of Jeffrey Kirschman, M.D., a treating physician, who believed that Thomas had no ability to complete a normal workday without interruption from psychologically based symptoms. (ECF No. 17 at 14, *citing* Tr. 676.) However, the ALJ expressly declined to ascribe controlling weight to Dr. Kirschman's opinion, because he found it to be "internally inconsistent; inconsistent with substantial evidence and opinions of record; and not supported by the proper medical credentials." (Tr. 29.) The ALJ assigned "less weight" to Dr. Kirschman's opinion regarding Thomas's psychological functioning because "he is not a psychologist or psychiatrist

12

and did not evaluate or treat the claimant for such conditions."[7] *Id*.

Finally, Thomas points to other portions of the record that she believes would necessitate greater restrictions. Thomas, however, does not identify any procedures that the ALJ failed to follow. Though Thomas appears to argue that the ALJ's opinion was not supported by substantial evidence, a claimant does not establish a lack of substantial evidence merely by pointing to evidence of record that supports her position. The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)). Therefore, Thomas must demonstrate that there is insufficient evidence in the record to allow a reasoning mind to accept the ALJ's finding. Thomas cites medical information of record that she suggests supports a finding that she is disabled, but she has failed to draw this Court's attention to any actual deficiency in the ALJ's reasoning or a dearth of evidence supporting the ALJ's position. As such, Thomas's argument is without merit.

---

[7] Notably, Thomas does not argue that the ALJ's assessment of Dr. Kirschman's opinion violated the treating physician rule. (ECF No. 17 at 13-14.)

*Credibility*

Finally, Thomas argues that the ALJ erred in assessing her credibility. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). The ALJ's credibility findings are entitled to considerable deference and should not be discarded lightly. *See Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). Nonetheless, "[t]he determination or decision must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individuals statements and the reason for the weight." SSR 96-7p, Purpose section; *see also Felisky,* 35 F.2d at 1036 ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so"). Beyond medical evidence, there are seven factors that the ALJ should consider.[8] The ALJ need not analyze all seven factors, but should show that he considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005); *Masch v. Barnhart*, 406 F. Supp.2d 1038, 1046 (E.D. Wis. 2005).

Thomas has not identified any legal or procedural deficiency in the ALJ's analysis. The ALJ clearly found that Thomas was not credible, and pointed to frequent reports of malingering,

---

[8] The seven factors are: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p, Introduction; *see also Cross*, 373 F. Supp. 2d at 732.

poor effort during testing, deliberate vagueness, and a rejection of offered medication. (Tr. 27-28.) The ALJ also observed that Thomas's daily activities were inconsistent with her alleged symptoms. (Tr. 28.) The Court sees no clear deficiency in the ALJ's credibility analysis.

As such, Thomas's third assignment of error is without merit.

### VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision of the Commissioner is AFFIRMED and judgment is entered in favor of the defendant.

IT IS SO ORDERED.

/s/ Greg White<br>U.S. Magistrate Judge

Date: September 26, 2011